UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LORRAINE HAVARD as Guardian of
CHELSIE BARKER, a minor,

       Case No. 2:06-cv-10449

     Plaintiff,

       HONORABLE STEPHEN J. MURPHY, III

v.

DEPUTY PUNTUER, DEPUTY GRIFFIN,
C. FRAZIER, R.N., jointly and severally,

     Defendants.

_____/


**ORDER DENYING DEFENDANTS'**
**MOTION FOR JUDGMENT ON THE PLEADINGS** (docket no. 17)


     This is a civil rights case, brought by the guardian of a minor child who was born in the Wayne County jail while her mother was incarcerated there, for injuries sustained during and immediately after the birthing process. The plaintiff alleges that three employees of the jail were indifferent to the minor child's serious medical needs during the labor and birth, resulting in severe mental retardation and cerebral palsy. This matter comes before the Court on the defendants' motion, which they have styled one for judgment on the pleadings.[1] The precise nature of the motion will be discussed shortly.

_____

     [1]The defendants have also filed a "Supplement to Renew Motion for Judgement on the Pleadings and Request to Strike Impertinent Allegation" dated May 25, 2007. This filing essentially restated an earlier argument based upon *Roe v. Wade* and requested that plaintiff's claims for conduct that occurred before the child's birth at 2:00 a.m. on December 3, 1998 be stricken as impertinent pursuant to Fed. R. Civ. P. 12(f). For the reasons stated below, the Court will not grant the defendants' request to strike allegations.

## PROCEDURAL POSTURE

The plaintiff first initiated this suit on January 31, 2006.  The plaintiff's complaint originally asserted claims against Wayne County and the Wayne County Jail, as well as some claims against various John/Jane Doe defendants.  The additional Doe defendants, however, have been dismissed and are no longer part of the case.  Additionally, the plaintiff originally asserted state law claims of gross negligence and wilful and wanton misconduct against all defendants, but those claims were dismissed by order of Judge Paul V. Gadola dated February 8, 2006.  Accordingly, only the plaintiff's federal law claim remains.

On March 27, 2006, the defendants filed a motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief has been granted.  The matter was referred for a Report and Recommendation to Magistrate Judge Mona K. Majzoub.  The magistrate judge issued a Report and Recommendation, recommending that the motion to dismiss be granted in part and denied in part.  The parties then filed objections to the Report and Recommendation.  On March 2, 2007, Judge Gadola conducted a hearing on the objections.  As a result of the hearing, Judge Gadola denied the motion to dismiss without prejudice and permitted the parties to file an amended complaint.  On March 12, 2007, the plaintiff filed an amended complaint.  The defendants renewed their motion to dismiss on March 15, 2007.  The case was reassigned to the undersigned pursuant to an administrative order on September 4, 2008.  The Court then vacated all orders of reference to the magistrate judge.  Accordingly, the only motion now before the Court is the defendants' renewed motion to dismiss the amended complaint filed on March 15, 2007.

2

Defendants have styled their instant motion one for "judgment on the pleadings" or "summary judgment on the pleadings." Federal Rule of Civil Procedure 12(c) does permit a motion for judgment on the pleadings, but only after the pleadings are closed. As the defendants have yet to file an answer in this case, a 12(c) motion would be premature at this point. The defendants apparently recognize this, and instead bring the instant motion under Rule 12(b)(6), which permits a defendant to move that a complaint be dismissed for failure to state a claim on which relief can be granted. Since a 12(b)(6) motion is proper at this stage of the proceedings, and motions under Rules 12(b)(6) and 12(c) are analyzed under the same legal standard, *Sensations, Inc. v. City of Grand Rapids*, 526 F. 3d 291, 295 (6th Cir. 2008), the Court will treat the instant motion as one to dismiss under Rule 12(b)(6).

In this renewed motion, the defendants argue that the amended complaint should be dismissed because (1) the infant Chelsie Barker was a fetus when the claims allegedly accrued and the unborn are neither "citizens" nor "other persons" within the meaning of the Fourteenth Amendment to the United States Constitution; (2) the plaintiff's claims are barred by the statute of limitations; and (3) the defendants are protected by the doctrine of qualified immunity. For the reasons that follow, the Court finds the defendants' arguments to be without merit and denies the renewed motion to dismiss in its entirety.

## **FACTS**

When considering a motion to dismiss, the complaint is construed in the light most favorable to the plaintiff. Accordingly, the following factual allegations are taken from the plaintiff's amended complaint.

3

At all times relevant to the defendants' motion, Chantrienes Barker was a pregnant inmate at the Wayne County Jail facility in December 1998.  Defendants Deputy Puntuer, Deputy Griffin and C. Frazier, R.N. were employed by the Wayne County Jail, and are alleged to have been the only deputies and/or nurses to interact with Chantrienes Barker.

The plaintiff alleges that on December 2, 1998, at approximately 3:00 a.m., Barker went into labor.  Barker was left in her cell until approximately 9:28 p.m. that same day, at which time she was brought by the Wayne County Jail's staff to Hutzel Hospital and evaluated by a physician.  While at Hutzel Hospital, Barker was electronically monitored, given pain medication, and noted to be dilated to two centimeters.

At approximately 11:28 p.m., the physician at Hutzel Hospital ordered that Barker be returned to Wayne County Jail.  The plaintiff alleges that once Barker was returned to the Wayne County Jail, she was locked up and not checked on by the defendants despite the fact that she was in labor.

While she was confined to her cell, Barker's labor pains intensified.  She notified Deputy Puntuer that she was experiencing contractions and needed medical attention as soon as possible.  For over two hours, allegedly none of the defendants checked on Barker or obtained medical care for her.  After two hours had passed, Deputy Puntuer brought Barker from her jail cell to the nurses station, but Nurse Frazier did not provide medical care to Barker.  Barker was again returned to her cell.

Back in her cell, Barker asked her cell mate to alert the defendants that she required immediate medical attention, but the cell mate was unable to get the attention of the defendants.  The complaint alleges that at this point all of the inmates on Barker's cell block

4

started screaming and banging on toilets and cell bars in an effort to alert the defendants, but that the defendants failed to respond.

Eventually, the defendants responded to the noise and asked Barker what was going on. Barker told the defendants that the baby was coming out and that Barker needed immediate medical attention. The defendants ordered Barker to stand up and get dressed, but Barker said that she could not move because the baby was coming out. The defendants placed Barker in a wheelchair and brought her to the nurses station at approximately 1:30 a.m. on September 3, 1998. At the nurses station, Nurse Frazier contacted EMS, but allegedly did not perform a nursing assessment, make a diagnosis, or render any care to Barker.

EMS arrived at approximately 1:57 a.m. When EMS arrived, they realized that Barker's baby was "crowning" or had already crowned. Within minutes, the baby Chelsie Barker, plaintiff in this action, was delivered at the Wayne County Jail. Chelsie Barker was not breathing, and EMS did not have the equipment to properly resuscitate the baby, so EMS transported both Chantrienes and Chelsie Barker to Hutzel Hospital.

Upon the arrival in the Hutzel Hospital Emergency Room, the baby was found to be cyanotic, with no respirations or heart rate. She was immediately intubated and CPR was initiated.

The plaintiff alleges that as a result of the distress suffered and lack of medical care provided during the labor and delivery process, the baby Chelsie Barker received numerous injuries, including severe mental retardation and severe cerebral palsy.

The plaintiff, Lorraine Havard, as guardian of the minor Chelsie Barker, filed the present action. The amended complaint asserts claims based on 42 U.S.C. § 1983,

5

arguing that the defendants Puntuer, Griffin and Frazier were deliberately indifferent to Chantrienes Barker and Chelsie Barker's serious medical needs in violation of the rights and privileges under the United States Constitution and various other federal statutes.

### STANDARD OF REVIEW

In reviewing a motion to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must "construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claim that would entitle him to relief." *Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 512 (6th Cir. 2001). The motion will be granted "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

### ANALYSIS

The plaintiff asserts a claim pursuant to 42 U.S.C. § 1983. Section 1983 does not create substantive rights, but serves as the procedural device for enforcing rights given by the United States Constitution and other federal statutes. To state a claim under Section 1983, a plaintiff must allege, first, that a right secured by the Constitution or a federal statute has been violated, and second, that the violation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

Here, the plaintiff asserts that the actions of the defendants in failing to provide medical attention to Chantrienes Barker during the birth of Chelsie Barker violated Chelsie's rights under the Due Process Clause of the Fourteenth Amendment. *See Bell v. Wolfish*, 441 U.S. 520 (1979) (Eighth Amendment cruel and unusual punishment clause does not

6

apply to non-convicted persons, but such persons have analogous protections under the due process clause of the Fourteenth Amendment).  The Due Process Clause of the Fourteenth Amendment "imposes a duty on state actors to protect and care for citizens in two situations: first, in custodial and other settings in which the state has limited the individual's ability to care for themselves; and second, when the state affirmatively places a particular individual in a position of danger the individual would not otherwise have faced." *Gregory v. Rogers*, 974 F.2d 1006, 1010 (8th Cir. 1992) (citations omitted).  The plaintiff argues, and the Court agrees, that when the injuries alleged occurred, the minor child Chelsie was being held in jail along with her mother and that, therefore, the state actors had a duty to protect and care for Chelsie.

The defendants assert three grounds for dismissing the complaint.  First, they argue that the complaint should be dismissed because the "unborn" are neither "citizens" nor "other persons" within the meaning of the Fourteenth Amendment, and thus have no rights under that Amendment.  Second, they argue that the complaint should be dismissed because the statute of limitations has run on the plaintiff's claims.  Third, they argue that the plaintiff's complaint should be dismissed because qualified immunity protects the defendants from suit.  The Court finds no merit in any of these arguments and will address each in turn.

A.   Is Chelsie Barker Barred from Recovering Under the Due Process Clause
     Because She Was not a "Citizen" or "Person" Within the Meaning
     of the Fourteenth Amendment at the Time of the Alleged Wrongful Acts?

The plaintiff's claims are predicated on 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution.  The defendants argue that the essence of the plaintiff's claims is that they denied a fetus medical care, to which she was entitled by

the Constitution.[2] They argue that, under the Supreme Court decision in *Roe v. Wade*, 410 U.S. 113 (1973), a fetus is not a "person" within the protection of the Fourteenth Amendment and therefore, the plaintiff cannot state a claim for relief under Section 1983 because all of the allegedly wrongful actions of the defendants occurred prior to Chelsie's birth.

The magistrate judge, in her Report and Recommendation, found that the Supreme Court's decision in *Roe v. Wade* barred the plaintiff's claims that arose from any defendant's conduct before the baby "crowned," but that a question of fact remained as to whether any injuries were sustained after crowning. No cases were cited to support this distinction, but on that basis, the magistrate judge recommended granting partial summary judgment in defendants' favor as to the injuries the plaintiff sustained prior to crowning, and conducting fact discovery as to when crowning actually occurred.

In *Roe v. Wade*, the Supreme Court held that "the word 'person,' as used in the Fourteenth Amendment, does not include the unborn." *Roe v. Wade*, 410 U.S. 113, 158 (1972). That holding was, of course, necessary to the larger holding of the case, because, as the Court noted, if it held otherwise "the fetus' right to life would then be guaranteed specifically by the [Fourteenth] Amendment." *Id.* at 156-57. Nineteen years later, in *Planned Parenthood of Southeastern Pennsylvania v. Casey*, a more divided Supreme Court failed to give a resounding vote of confidence to the *Roe* decision, but upheld its "central principle" – that a woman has a right to terminate her pregnancy prior to viability.

---

[2] The defendants also argue that "[b]ecause the fetus was neither a pretrial detainee or convicted offender, arguably, there is no action 'under color of law.'" Defendants' Motion For Judgment On The Pleadings, at 3. The defendants have cited no caselaw to support this proposition and, thus, the Court finds the argument meritless.

8

*Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833, 871 (1992). The *Casey* Court rejected *Roe*'s trimester framework in favor of an analysis that looked toward whether state regulations of abortion imposed an undue burden on a pre-viability abortion. The decision in no way strengthened or relied upon the *Roe* analysis of an unborn's personhood.

Thus, while the holding of *Roe* on the applicability of the Fourteenth Amendment to fetuses is clear and well known, the Supreme Court was not in that case anywhere close to dealing with the issue before this Court; *i.e.*, whether a child may maintain a Section 1983 claim against state actors for injuries sustained during alleged unconstitutional conduct that occurred while the mother was in labor, causing injuries both during and after birth. The question therefore is whether the holding of *Roe* – that a fetus is not a "person" within the meaning of the Fourteenth Amendment – requires dismissal of a Fourteenth Amendment claim presented by the facts of this case.

The defendants cite the cases of *Harman v. Daniels*, 525 F. Supp. 798 (E.D. Va. 1981) and *Romero v. Gonzales Caraballo*, 681 F. Supp 123 (D.P.R. 1988) in support of the argument that because the plaintiff was a fetus at the time of the alleged wrongful acts, she cannot sustain a claim under Section 1983. The plaintiff cites the case of *Douglas v. Town of Hartford*, 542 F. Supp. 1267 (D. Conn. 1982) for the converse proposition. The Court finds these three cases to be the most similar, factually, to the present case.

*Harman v. Daniels,* the main case relied upon by the defendants, involved a claim by an infant and her mother against a police officer for actions taken while the infant plaintiff was in utero. The infant plaintiff, Sarah Beth Harman, claimed that she the defendant officer assaulted her by striking her mother in the stomach, causing injuries which required

9

substantial and continuing medical care.  The defendant officer moved to dismiss the infant's claim, arguing that the plaintiff was not a "person" or a "citizen" within the meaning of Section 1983 when the acts occurred that caused the alleged deprivation of her constitutional rights.  The district court first held that the infant plaintiff's claim arose at the time of the claimed wrongful act, namely, the alleged punch by the defendant officer and his alleged subsequent refusal to seek medical assistance for the mother.  *Harman*, 525 F. Supp at 800.  Relying on *Roe v. Wade*, the district court held that "the word 'person' as used in the Fourteenth Amendment does not include the unborn."  *Id.* (*quoting Roe v. Wade*, 410 U.S. at 158).  The court reasoned that since *Roe*, no case had held that a fetus was a "person" entitled to the constitutional protections embodied in the Civil Rights Act. *Id.*

The court in *Harman* went on to analyze whether Section 1983 provided a cause of action for the unborn despite the court's conclusion that a fetus was not a "person" for purposes of the Fourteenth Amendment.  The court noted that just because a fetus is not constitutionally entitled as a "person" to claim certain remedies or rights, that does not prevent Congress from extending protection to unborn children by appropriate legislation. Nonetheless, the *Harman* court concluded, based upon its review of recent Congressional acts, Court decisions, and the legislative history of Section 1983, that Congress did not intend to extend rights to the unborn under Section 1983.  *Id.* at 801.  The *Harman* court said that it was in agreement "with the few cases in which courts have determined that the ipse dixit in *Roe v. Wade* precludes relief for constitutional deprivations sought on behalf of a child in utero under Section 1983."  *Id.* (citations omitted).  The *Harman* court acknowledged that the plaintiffs in the previously decided cases were in utero at the time

10

of bringing the action, as compared with the plaintiff before the *Harman* court who was alive at the time of the action, but stated that "[t]his is a distinction without a difference. The fact that a fetus may be capable of sustaining life in the future does not have any affect upon the availability of remedies under Section 1983." *Id.* Finally, the *Harman* court concluded that the plaintiff was not a "citizen" within the meaning of Section 1983 when the alleged injury occurred, because the Fourteenth Amendment limits citizenship to persons "born . . . in the United States." *Harman*, 525 F. Supp. at 801 (*quoting Montana v. Rogers*, 278 F.2d 68, 72 (7th Cir. 1960)).

The district court of Puerto Rico addressed a similar case in *Romero v. Gonzales Caraballo*, 681 F. Supp. 123 (D. P.R. 1988). *Romero* involved facts similar to *Harman*, in which a woman pregnant in her ninth month alleged that she was beaten by police officers in the course of an arrest. The mother alleged various claims of unlawful force and retaliation against the police pursuant to Section 1983, and the son Acevedo, who was born some weeks after the incident, separately brought a Section 1983 action based upon the conduct of the police that occurred while he was in utero. Relying on *Roe v. Wade* and on *Harman*, the district court in *Romero* granted the defendants' motion to dismiss the infant Acevedo's claims on the grounds that he was not, on the night in question, a "person" within the meaning of the Fourteenth Amendment. *Romero*, 681 F. Supp. at 126.

On the opposing side of the question is the opinion of the district court in *Douglas v. Town of Hartford*, 542 F. Supp. 1267 (D. Conn. 1982), the main case relied upon by the plaintiffs. *Douglas*, like *Harman* and *Romero*, involved a pregnant woman who was the alleged victim of police brutality. The adult plaintiff in *Douglas* was 5½ months pregnant when she was allegedly beaten by police officers. She brought suit under Section 1983

11

and her infant child, born some months later, also brought a Section 1983 suit for injuries sustained during the alleged beating. The *Douglas* court did not discuss *Roe v. Wade*, but noted that several federal courts had ruled that a fetus was not a "person" for purposes of Section 1983. *Douglas*, 542 F. Supp. at 1270 (citing *Guyton v. Philips*, 606 F.2d 248 (9th Cir. 1979); *Poole v. Endsley*, 371 F. Supp. 1379 (N.D. Fla. 1974); and *McGarvey v. Magee-Womens Hosp.*, 340 F. Supp. 751 (W.D. Pa. 1972)). Contrary to these case, the court in *Douglas* held that "recent and well-established trends in the state courts, including those in Connecticut, have expanded the legal rights of the viable fetus in a wide variety of contexts," *id.* (citations omitted), and found that "accordingly, the Court denies the defendants' request to dismiss the claims" of the infant plaintiff. *Id.*

A fair criticism of the opinion in *Douglas*, and one stated in *Romero*, is that the court in *Douglas* did not go through a detailed analysis of section 1983, and based its decision on advances in state court decisions rather than federal law. *Harman* is unquestionably more detailed and rigorous in its analysis. On the other hand, the *Douglas* court was correct in its discussion of the developing protection of fetuses in state legislatures. Currently, at least 36 states (including Michigan) have fetal homicide laws. *See* National Conference of State Legislatures, Fetal Homicide, Updated June 2008 (http://www.ncsl.org/programs/health/fethom.htm); M.C.L. § 600.2922a (wrongful or negligent act against pregnant individual resulting in miscarriage, stillbirth, or injury or death of embryo or fetus). Congress has also passed a federal version of such a law with the Unborn Victims of Violence Act of 2004, which recognizes a "child in utero" as a legal victim, if he or she is injured or killed during the commission of any of over 60 listed federal

12

crimes of violence.  18 U.S.C. § 1841.  The bill explicitly exempts abortion from the reach of the act.  18 U.S.C. § 1841(c)(1).

None of these cases constitute binding precedent in this Court (except for *Roe v. Wade*, to the extent that it is applicable).  Further, even if the cases analyzed above did constitute binding precedent, they all involved allegations of unlawful force and injury inflicted upon a fetus weeks or months prior to birth.  Here, on the other hand, the injury occurred during and after birth. Therefore, none of the cited cases are dispositive of the question presently before the Court.  In fact, there is no case that is precisely on point, dealing with injuries sustained by a child during and after labor and delivery brought under Section 1983 and asserted by the surviving child. In light of what allegedly happened in this case – injuries inflicted on a fetus, and then infant, throughout and immediately after the birthing process – the Court finds precedent regarding the legal status of a pre-born human to be of highly limited value.

Fortunately, however, the Court need not engage in legal line drawing, because there are far narrower grounds upon which the plaintiff's claim may be sustained.  One case not cited by either party, but which the Court finds highly persuasive, is the Ninth Circuit's opinion in *Crumpton v. Gates*, 947 F.2d 1418 (9th Cir. 1991).  *Crumpton* was a suit brought by the child of a man killed by an alleged LAPD "death squad."   Although the plaintiff in *Crumpton* was a six-year-old child at the time of the suit, he was a two-month old fetus at the time his father was killed.  The defendants moved for summary judgment on the grounds that the plaintiff was a fetus at the time his father was killed, and thus not a "person" as contemplated by 42 U.S.C. § 1983.  The district court granted the defendants' motion, relying upon *Roe v. Wade*.

13

But the Ninth Circuit reversed.  It found that the cases holding that a fetus is not a person for purposes of Section 1983 were not dispositive of the case before it, which involved the question of whether a six-year-old child may assert a claim under Section 1983 for the killing of his father while he was in utero.  In reaching its holding, the *Crumpton* court distinguished *Harman* and *Romero* on the grounds that those cases involved physical injuries to fetuses while they were in the womb, and in each case "the plaintiff's injury was complete at the moment the wrongful act, a physical attack, injured the fetus." *Crumpton*, 947 F.2d at 1422.  The court found that in *Crumpton*, the injury – the loss of a father's companionship – did not occur immediately upon the commission of the wrongful act, *i.e.*, the father's killing.  Instead, the court found that because a child has familial relationships only after birth, it necessarily follows that a child's right to familial relationships exists *only after* birth.  *Id.*  Thus, the court found, "although the wrongful act occurred while Crumpton was in utero, the injury or suffering which flowed from that wrongful act occurred postnatally." *Id.*  The Ninth Circuit disapproved of the reasoning of *Harman*, but found that, even under that reasoning, the plaintiff could sue, because he was a "person" when the injury occurred, namely, at his birth.  *Id.*  The Ninth Circuit also noted that such reasoning is consistent with common law tort principles, a reasoning method which the Supreme Court has endorsed in establishing the elements of Section 1983 claims.  *Id.* at 1423.[3]  This

---

[3] The *Crumpton* court also noted in a footnote that, because the courts have held that a right of action does not arise until a party has a right to enforce its claim, it had "grave doubts" about the conclusion of the *Harman* court that "infants injured in utero and later born alive simply must bear their federally cognizable afflictions without hope of remedy." *Crumpton*, 947 F.2d at 1424, n.6.  The court did not reach the precise issue, however, because it found that even under the *Harman* rationale, the plaintiff in *Crumpton* could still state a claim for relief.

Court finds the reasoning of the Ninth Circuit persuasive and fully consistent with precedent in the Sixth Circuit, and further finds the reasoning of the *Harman* court to be inapposite.

Federal law governs when a claim accrues for purposes of Section 1983 actions:

Aspects of § 1983 which are not governed by reference to state law are governed by federal rules conforming in general to common-law tort principles. *See Heck* [*v. Humphrey*, 512 U.S. 477,] 483; *Carey v. Piphus*, 435 U.S. 247, 257-258 (1978). Under those principles, it is "the standard rule that [accrual occurs] when the plaintiff has 'a complete and present cause of action.' " *Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 201 (1997) (quoting *Rawlings v. Ray*, 312 U.S. 96, 98 (1941)), that is, when "the plaintiff can file suit and obtain relief," *Bay Area Laundry*, *supra*, at 201.

*Wallace v. Kato*, 127 S. Ct. 1091, 1095 (U.S. 2007).

According to Black's Law Dictionary, to "accrue" means "[t]o come into existence as an enforceable claim or right; to arise." Under the *Wallace* standard, Chelsie Barker was unquestionably a "person" within the Fourteenth Amendment at the time her claims accrued. The decision of the *Harman* court, which essentially looked at the time of the wrongful act, is inconsistent with this precedent and therefore not authoritative here.

Applying the reasoning of *Crumpton* to the facts of this case, and viewing the allegations in the light most favorable to the plaintiff, the Court finds that the complaint alleges facts that show that the injury to Chelsie Barker occurred during the process of and in the time period following her birth. The complaint alleges that the defendants ignored Chantrienes Barker's pleas for medical attention for some time. The complaint alleges that the defendants ignored and refused to attend to the mother for over two hours while she was in active labor. The complaint alleges that when the mother was brought to the jail's nurses station at approximately 1:30 a.m., the mother had already passed her mucous plug, her water had broken, and she had bloody show. When EMS arrived at

15

approximately 1:57 a.m., the defendants realized the baby was crowning or had already crowned and, within minutes, the baby was delivered at the Wayne County Jail.  At that time, EMS noted that the baby was not breathing.  Since they did not have the equipment to properly resuscitate the baby, they transported both the mother and the baby to Hutzel Hospital.  When the infant baby Chelsie Barker arrived at Hutzel she was cyanotic and had no respiration or heartbeat.  She was intubated and CPR was initiated.  The plaintiff alleges that as a result of these events, Chelsie Barker suffered perinatal asphyxia and hypoxic-ischemic encephalopathy and has consequently sustained severe injuries including severe mental retardation and severe cerebral palsy.

Applying the ruling in *Crumpton* to these facts, the complaint states a claim that Barker's injuries were sustained during the time period following her birth, while she was transported to the hospital, and that the cause of her injuries was the lack of adequate medical care during and immediately after birth.  The defendants had sufficient warning that the child was on the way and did not get her the medical care she needed immediately prior to, during, and after her birth.  On these facts, a jury could conclude that because of the defendants' deliberate indifference to Chelsie Barker's serious medical needs, she was not in a hospital at the time of her birth, the physicians and the facilities of the hospital were not available to resuscitate her when she was born, and she was not resuscitated until she arrived at the hospital.

The Court also finds that the plaintiff has also stated a claim for those injuries which Chelsie Barker may have received during the delivery process prior to birth.  Because the injury was a continuous one, and given the Court's finding that she is entitled to maintain

16

an action under Section 1983, there is no principled reason to distinguish those injuries sustained before the birth from those sustained after birth.

B.   May the Plaintiff Recover for Injuries Alleged or
     Does the Relevant Statute Of Limitations Bar Her Claims?

The defendants argue that although the Michigan three-year statute of limitations applies to the plaintiff's claims, the tolling provisions of M.C.L. § 600.5851 should not be applied to permit the plaintiff's claims here, which were brought more than three years after the date of the alleged injury, and that the plaintiff's claims are therefore time barred.

There is no specific limitations periods for claims brought under Section 1983. Rather, federal courts borrow a limitations period from analogous state statutes. *Collard v. Kentucky Bd. of Nursing*, 896 F. 2d 179, 180 (6th Cir. 1985). In looking for an applicable statute of limitations, Section 1983 claims are to be characterized as personal injury actions. *Owens v. Okure*, 488 U.S. 235 (1989).

Because this suit was filed in the United States District Court for the Eastern District of Michigan, all the parties are Michigan residents, and the alleged misconduct occurred entirely within Michigan, the Court must look to Michigan law to determine the statute of limitations. The Sixth Circuit has held that when state law provides multiple statutes of limitations for personal injury actions, courts faced with the proper limitation period for a Section 1983 claim should borrow the general or residual statute for personal injury actions. *Collard*, 896 F.2d at 181. Therefore, the correct limitation period here is the one found in M.C.L. § 600.5805(10), which provides that general personal injury actions may be brought with three years after the time of death or injury. *Carroll v. Wilkerson*, 782 F.2d 44, 44 (6th

17

Cir. 1986) (holding Section 1983 claims brought in Michigan are subject to the three-year statute of limitations for personal injury claims).

If the Court were to apply only the three-year statute of limitations, the plaintiff's claims would be time barred because her suit was filed more than three years after Chelsie's injuries, all of which she apparently sustained on the day of her birth.  In both personal injury and medical malpractice cases, however, Michigan applies an infancy tolling period. M.C.L. § 600.5851.  Section 600.5851 provides in relevant part that "if the person entitled to . . . bring an action under this act [the Revised Judicature Act of 1961] is under 18 years of age or insane at the time the claim accrues, the person or those claiming under the person shall have 1 year after the disability is removed . . . to . . . bring the action although the period of limitations has run."  M.C.L. § 600.5851.  The Court finds that M.C.L. § 600.5851 applies in this case and tolls the running of the statute of limitations during Chelsie's infancy.  Therefore, the Court concludes that the present action was timely filed.

The Supreme Court has held that when the federal courts borrow a state statute of limitations in § 1983 actions , they also borrow the forum state's tolling rules.  *Hardin v. Straub*, 490 U.S. 536 (1989) (holding that, in a Section 1983 case filed in Michigan, M.C.L. § 600.5851(1) applied to toll the limitation period for a prisoner lawsuit until he was released from prison).  M.C.L. § 600.5851(1) was amended in 1994 to remove such tolling as to prisoners, but kept tolling as to infants and the insane.

In support of their argument that M.C.L. § 600.5851 does not apply to toll the plaintiff's claim during her infancy, the defendants rely on *Cameron v. Auto Club Ins. Ass'n.*, 263 Mich. App. 95 (2004), *aff'd in part and vacated in part*, 476 Mich. 55 (2006).  The Michigan Court of Appeals noted in *Cameron* a 1993 amendment to M.C.L. § 600.5851, which

18

changed the language of the tolling provision to apply to persons "entitled to bring an action under this act" from the previous language which applied the tolling provision to "any action." The court of appeals held that since a No Fault action is not brought under the Revised Judicature Act, the tolling provision of M.C.L. § 600.5851 did not apply to toll the plaintiff's claims during his infancy.

The Court finds this argument to be without merit. First, the plaintiff correctly notes that the portion of the Michigan Court of Appeals decision relied upon by the defendants in this action was vacated by the Michigan Supreme Court. On appeal, the court did not reach the issue of whether the infancy tolling period of M.C.L. § 600.5851(1) applied to claims brought under the No Fault Act and its separate statute of limitations, because it found that the plaintiff's claims in *Cameron* were barred on the narrower ground that the infancy tolling period did not apply to the one-year-back rule of the No Fault statute. *See Cameron,* 476 Mich. 55, 64 (2006). Further, as the plaintiff correctly points out, the three-year Michigan statute of limitations applicable to the present § 1983 action is found in the Revised Judicature Act itself, unlike the No Fault statute of limitations addressed by the Court of Appeals in *Cameron.* Thus, *Cameron* is simply not applicable to this case.

Finally, the defendants argue that because plaintiff's minor was not a "person" within the meaning of the tolling statute or Section 1983, the tolling provision does not create a substantive right that otherwise did not exist. It is not clear exactly what the defendants are arguing here, but to the extent they are arguing that the tolling statute does not apply because Chelsie was not born when her injuries occurred, the Court rejects the argument. The Court has already noted that the plaintiff has alleged several injuries to Chelsie Barker

19

that occurred after her birth. Additionally, Michigan courts consistently apply tolling statutes to toll personal injury claims based on prenatal injuries, and this Court will do likewise.

For these reasons, the Court finds that the plaintiff's claims in the present action are not barred by the statute of limitations.

C.   Does Qualified Immunity Protect Defendants'
      Conduct Because Chelsie Barker's Rights Were Not Clearly
      Established At The Time Of The Alleged Wrongful Conduct?

The defendants assert that the doctrine of qualified immunity requires that the plaintiff's claims be dismissed for two reasons. First, the defendants argue even if Chelsie Barker did have constitutional rights before her birth, because *Roe* has not been overruled, they had no reason to believe so at the time her injuries occurred.   Additionally, the defendants argue that there was no constitutional violation because the Due Process Clause required that the defendants summon medical assistance, not provide it, and the defendants did summon EMS.

The issue of whether qualified immunity applies is a question of law.  *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 900 (6th Cir. 2004).  "Qualified immunity provides 'that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Id.* (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

> Because qualified immunity is "an immunity from suit rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis deleted). Indeed, we have made clear that the "driving force" behind creation of the qualified immunity doctrine was a desire to ensure that "'insubstantial claims' against government officials [will] be resolved prior to discovery." *Anderson v. Creighton*, 483 U.S. 635, 640, n. 2 (1987). Accordingly, "we repeatedly

20

have stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam).

*Pearson v. Callahan*, No. 07-751, slip op. at 6 (U.S. Jan. 21, 2009).  The Sixth Circuit applies a two-step inquiry in determining whether qualified immunity applies: "(1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established."  *Estate of Carter v. City of Detroit,* 408 F.3d 305, 310-11 (6th Cir. 2005) (citing *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001)).[4]

When a defendant asserts a defense of qualified immunity, a court should rule on the issue early in the proceedings so that the costs and burdens of a trial will be avoided if the issue is dispositive.  *Saucier v. Katz*, 533 U.S. 194, 200 (2001).  This is because the defense of qualified immunity "is 'an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.'" *Id.* (*quoting Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis original).

The Supreme Court has held, in the Eighth Amendment context, that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment."  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation omitted).  "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's need or by prison guards intentionally denying

---

[4] The United States Supreme Court in *Pearson v. Callahan* recently ruled that the *Saucier* two-step procedure is no longer mandatory.  *Pearson v. Callahan*, No. 07-751 (U.S. Jan. 21, 2009).  The Supreme Court recognized, however, that "it is often beneficial" to courts.  *Id.* at 11.  Here, the Court finds that the *Saucier*  procedure "facilitate[s] the fair and efficient disposition" of this case.  *Id.* at 17.

or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.* at 104-05 (footnotes omitted).

> An Eighth Amendment claim has two components, one objective and one subjective. To satisfy the objective component, the plaintiff must allege that the medical need at issue is "sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the subjective component, the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk. *Farmer*, 511 U.S. at 837. Emphasizing the subjective nature of this inquiry, the Supreme Court has noted that "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Id.* at 838 (emphasis added).

*Comstock v. McCrary* , 273 F.3d 693, 702 -703 (6th Cir. 2001). As discussed above, the same standard applies under the Fourteenth Amendment to the plaintiff's claims here. The plaintiff bears the "onerous burden of proving the official's subjective knowledge" but "this element is subject to proof by 'the usual ways,'" including proof by circumstantial evidence. *Id.* at 703 (quoting *Farmer*, 511 U.S. at 842).

In the present case, the complaint alleges facts that could be construed to constitute deliberate indifference to Chelsie's serious medical needs. The complaint alleges that the infant's mother was in active labor, crying out for help, to the knowledge of the defendants, and was left by the defendants in her cell for two hours; that the paramedics did not arrive until the infant was being delivered and did not have the equipment to resuscitate the child when she was delivered; and that all of this resulted in severe injuries to the infant. These facts establish both the objective and subjective components of the test. Thus, the allegations establish a violation of a constitutional right.

Therefore, the only questions remaining are whether "the violation involved a clearly established constitutional right of which a reasonable person would have known" and

22

whether "the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Feathers*, 319 F.3d at 848.

The Court finds that the complaint alleges facts upon which the Court could conclude that the defendants violated Chelsie Barker's clearly established constitutional rights by being deliberately indifferent to her serious medical needs. The complaint alleged facts which, if believed, establish that the defendants refused to act in the face of various warnings that Chelsie Barker was in the process of being born in the Wayne County Jail without medical attention, after her mother had been in labor for almost 24 hours.    A factfinder may infer that a prison official knew of a substantial risk "from the very fact that the risk was obvious." *Farmer v. Brennan*, 511 U.S. 825, 842 (1994).    A reasonable person would have known that failing to obtain medical care in that situation constituted deliberate indifference to Chelsie Barker's serious medical needs, some of which were ongoing and others of which were obviously imminent.

A constitutional right can be clearly established even if there is no case involving fundamentally or materially similar facts.  *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).  The responsibility to care for helpless infants who have newly come into the world – including the duty to care for them by anticipation, during the birthing process – need not be articulated through nuanced jurisprudence in order to be accessible to a reasonable person.  It may be true that the legal consequences of injuries to children in utero are obscured by a judicially created haze.  But, as *Crumpton* noted, no such confusion exists with respect to injuries sustained by an already-born child as a result of actions taken prior to birth.  In this situation, basic human emotion as well as the applicable precedents would

23

compel a reasonable person to conclude that the conduct of the prison officials in this case was in clear violation of the constitutional rights of the soon-to-be newborn child.

Thus, the Court finds that the defendants' argument – that because Chelsie Barker was a fetus at the time of the defendants' actions, her rights not to have her serious medical needs ignored by jail officials were not "clearly established" – is without merit.  The Supreme Court has held that a defendant cannot avoid a finding of deliberate indifference by arguing that, "although he was aware of an obvious, substantial risk to inmate safety," he or she did not know the exact source of the plaintiff's risk.  *Farmer v. Brennan*, 511 U.S. 825, 843 (1994).  In reaching this holding, the *Farmer* court cited with approval state-law cases in which courts upheld criminal liability for injury to unanticipated victims.  *Id.* at 844. The Supreme Court has also held that deliberate indifference to a condition that can cause serious future damage to an inmate's health can give rise to a constitutional violation. *Helling v. McKinney*, 509 U.S. 25, 35 (1993).  Thus, the Constitution imposes a clearly established duty on state officials to anticipate the serious medical needs of persons in their care.  The Court sees no reason to regard this duty as any less clearly established simply because the risk of harm is posed to an individual who may not yet be a legal person, but who obviously will be one by the term the harm (or a significant portion of it) occurs. Although an argument that there is no duty to anticipate the serious medical needs of such a soon-to-be "person" may be a fathomable piece of legal writing, the argument is so shockingly callous and obviously unsupported by sound rationale that it fails to even  call into question whether such a duty is well established.  Here, a reasonable person in the position of the defendants would have understood the risk that an infant born in the Wayne County Jail away from the attention of medical personnel would have serious medical

24

needs, and should have anticipated those needs.  For these reasons, the Court finds that the defendants are not entitled to qualified immunity at this stage of the proceedings.

As to defendants' final argument, at this early stage the defense fails as a matter of law based on the allegations of the complaint. The plaintiff is not claiming that the defendants did not summon medical help. Instead, the plaintiff is claiming that the steps taken by the defendants in the face of the mother's obvious distress and progress in labor, and the serious risk that a child would be born without access to necessary medical attention, were insufficient as a matter of law. In other words, the plaintiff is not alleging that the defendants failed entirely to summon medical help, but rather that they cruelly delayed before doing so.  In the cases cited by the defendants, *Maddox v. Los Angeles*, 792 F.2d 1408 (9th Cir. 1986) and *Tagstrom v. Enockson*, 857 F.2d 502 (8th Cir. 1988), the courts held that the plaintiffs could not state a cause of action for deliberate indifference to medical needs where it was undisputed that the defendants acted promptly to secure medical attention upon seeing an accident.  Cf. *Rich v. City of Mayfield Heights*, 955 F.2d 1092, 1098 (where police officers, discovering the plaintiff's decedent hanging in his cell, reacted immediately by calling for paramedics, and the paramedics arrived within minutes, there was no deliberate indifference to medical needs on the part of the defendants).   The operative concept in these decisions is "promptness".  Since the plaintiff alleges facts which, if believed, show that the defendants did not promptly respond to the child's serious medical needs here, the cases cited by the defendants are simply not dispositive.

## CONCLUSION

Accordingly, after having reviewed the pleadings and the applicable portions of the record, and having conducted a full hearing, for all the reasons set forth above,

25

**IT IS HEREBY ORDERED** that the defendants' motion for judgment on the pleadings

[docket entry #17] is **DENIED**.

**SO ORDERED.**

s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated:  January 22, 2009


I hereby certify that a copy of the foregoing document was served upon the parties
and/or counsel of record on January 22, 2009, by electronic and/or ordinary mail.

s/Alissa Greer
Case Manager